**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 27 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ELLIOT FRIEDMAN, | No. 22-56076 |
| Plaintiff-counter-defendant-Appellee, | D.C. No. 2:19-cv-05545-JAK-RAO |
| v. | |
| EYELIGHT, INC.; MICHAEL S. BERLIN, | MEMORANDUM* |
| Defendants-counter-claim-third-party-plaintiffs-Appellants, | |
| v. | |
| MLASE A.G.; JOHANES JUNGER; MARCUS ENDERS; AXEL WERBACH, | |
| Third-party-defendants. | |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted December 8, 2023
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: WARDLAW and BUMATAY, Circuit Judges, and KENNELLY,** District Judge.
Concurrence by Judge BUMATAY.

Michael S. Berlin and EyeLight, Inc. (collectively, "EyeLight") appeal the district court's order granting summary judgment to Elliot Friedman ("Friedman") as to Count III of EyeLight's First Amended Counterclaim for breach of a confidentiality agreement (the "Friedman NDA"). We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

1.  The district court erred in limiting the scope of the Friedman NDA to information EyeLight regards as proprietary. The Friedman NDA prohibits the unauthorized use of "Confidential Information" that one party ("Disclosing Party") discloses to the other party ("Receiving Party"). The Friedman NDA defines "Confidential Information" as information "that Disclosing Party regards as confidential or proprietary." Accordingly, information may fall within the scope of the agreement even if the Disclosing Party does not necessarily regard the information as "proprietary."[1] Any interpretation to the contrary would render the

---

** The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

[1] We agree with the district court that information which EyeLight regarded as confidential and which was disclosed to Friedman as part of the EyeLight/MLase negotiations would fall within the scope of the Friedman NDA's "Purpose" to the extent Friedman and EyeLight evaluated their continuing business relationship in any part based on the EyeLight/MLase negotiations.

phrases "regards as confidential" and "regarded as confidential" in the NDA's third paragraph superfluous and would require us to ignore the disjunctive use of "or" throughout the same. *See* Cal. Civ. Code § 1641; *Yahoo Inc. v. Nat'l Union Fire Ins. Co.*, 14 Cal. 5th 58, 69 (2022) (California law "favor[s] an interpretation that gives meaning to each word in a contract over an interpretation that makes part of the writing redundant").

The Friedman NDA further provides that any disclosure of "Confidential Information" by "any unaffiliated third party at the request of Disclosing Party[] shall be deemed to be a disclosure made by Disclosing Party under th[e] Agreement." Such information is not subject to the Friedman NDA's obligations of confidentiality and non-use unless the unaffiliated third party is "under an obligation of confidentiality to the Disclosing Party with respect to said Confidential Information."

The record shows that Friedman's personal outreach to MLase after departing EyeLight at a minimum disclosed the existence of commercial negotiations between EyeLight and MLase, and it used MLase's April 24, 2018 counter-proposal to initiate new negotiations between MLase and Friedman directly. The parties also do not dispute that EyeLight and MLase entered into a valid confidentiality agreement (the "MLase MCA") in December 2017 that imposed mutual obligations of confidentiality between EyeLight and MLase,

3

including with respect to "the fact that the parties have entered into discussions" regarding a potential "commercial relationship between the Company [EyeLight] and Recipient [MLase]."[2]

In light of these facts and the interpretation of the Friedman NDA described above, the district court's summary judgment order overlooked at least three genuine issues of material fact:

First, drawing all reasonable inferences in the record in favor of EyeLight, a triable issue exists as to whether EyeLight "requested" the negotiations with MLase generally or MLase's April 24, 2018 counter-proposal specifically, within the meaning of the Friedman NDA. From November 2017 through January 2018, EyeLight, through its acting CEO Stan Miele, actively sought discussions with MLase regarding a potential business collaboration. After EyeLight and MLase executed the MLase MCA, Miele sent a proposed term sheet to MLase "for our discussion" and invited MLase to "mark [the document] via redline." The parties

---

[2] We disagree with Friedman's argument that we cannot look to the MLase MCA because EyeLight did not allege its existence in the pleadings. Courts generally will not consider at summary judgment claims that were not pleaded in the complaint. *See, e.g.*, *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). But EyeLight relies on the MLase MCA as evidence that the information Friedman allegedly used after leaving EyeLight was confidential within the meaning of the Friedman NDA—not as the basis for "new or different grounds for asserted liability beyond those properly noticed in the complaint." *Fox v. Good Samaritan L.P.*, 801 F. Supp. 2d 883, 896 n.11 (N.D. Cal.), *aff'd sub nom. Fox v. Good Samaritan Hosp. L.P.*, 467 F. App'x 731 (9th Cir. 2012).

exchanged proposals and counter-proposals for a number of months until Friedman, on April 20, 2018, sent a proposal to MLase and requested "a telephone conference this upcoming week to discuss."  MLase responded on April 24, 2018 with its counter-proposal.  Although some evidence suggests that EyeLight did not specifically request the April 24, 2018, counter-proposal from MLase—namely, Berlin's statement that Friedman's April 20, 2018 offer was an "unauthorized correspondence"—Berlin himself noted that he "could live with [Friedman's proposal]" and the record broadly supports a finding that EyeLight requested the negotiations with MLase generally.

A second triable issue exists as to whether EyeLight, which would be deemed the "Disclosing Party" under the Friedman NDA if EyeLight requested the counter-proposal from MLase or the negotiations with MLase more broadly, regarded either the specific proposal or the negotiations at large to be confidential. Significant evidence suggests that it did, including communications from Berlin to Friedman describing materials related to MLase as confidential; the term sheet Friedman himself sent to MLase in March 2018 that included a confidentiality provision covering "the existence of any details of the negotiation" between EyeLight and MLase; and the MLase MCA, which covered "discussions" regarding the potential "commercial relationship" between the companies.

Third, the district court improperly limited EyeLight's claim of breach to

5

Friedman's use of the April 24, 2018 counter-proposal. Even if EyeLight did not "request" the negotiations broadly or the counter-proposal specifically or did not regard either as confidential, a genuine issue nonetheless exists as to whether Friedman used EyeLight's own confidential or proprietary information in his personal outreach to MLase.[3]

Circumstantial evidence suggests that Friedman "employed" or "availed himself" of EyeLight's confidential or proprietary information when he told MLase that its April 24, 2018 counter-proposal was "within a reasonable range." *Batt v. City of San Francisco*, 184 Cal. App. 4th 163, 172 (2010). Prior to his six months as the CEO of EyeLight, Friedman had never worked in any aspect of ophthalmology, had no professional experience with glaucoma-related devices or businesses, and had not worked in the ELT industry. EyeLight granted Friedman access to confidential and/or proprietary internal EyeLight analyses regarding ELT's marketability, cost, potential profitability, effectiveness, and estimated

---

[3] We disagree with Friedman that California's rejection of the "inevitable disclosure doctrine" forecloses EyeLight's claim in this respect. The inevitable disclosure doctrine operates in the preliminary injunction context to "permit[] a trade secret owner to prevent a former employee from working for a competitor despite the owner's failure to prove the employee has taken or threatens to use trade secrets . . . by demonstrating that the employee's new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets." *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1446–47 (2002). California's rejection of the doctrine is both factually and procedurally inapposite here, where EyeLight has asserted actual use—not mere knowledge or "inevitable" use—and is seeking monetary, not injunctive relief.

timelines for FDA approval and commercialization; Berlin's analyses whether to make or purchase ELT technology; and EyeLight's assessments of the value of MLase's technology, services, and other components. Given that Friedman likely could not have assessed the value of MLase's counter-proposal without relying at least in part on information to which he was privy as CEO of EyeLight, a reasonable factfinder could conclude that Friedman employed or availed himself of EyeLight's confidential or proprietary information in his personal outreach to MLase.

2. We decline to affirm the district court's grant of summary judgment on the alternative ground that EyeLight has not shown or is not entitled to damages. The Friedman NDA provides for the availability of equitable remedies notwithstanding the existence of relief at law, and California courts have recognized that unjust enrichment can satisfy the damages element of a breach of contract claim such that restitution or disgorgement is a proper remedy. *E.g.*, *Ajaxo Inc. v. E\*Trade Group Inc.*, 135 Cal. App. 4th 21, 54–57 (2005).[4] California law also provides for nominal damages in the event of breach without actual

---

[4] We decline to reach Friedman's argument that disgorgement of $3.6 million would amount to an improper windfall or an amount not within the reasonable contemplation of the parties. EyeLight seeks "[r]estitution in the amount of Friedman's interests in ELT Sight, in whole *or in part* . . . ." (emphasis added). Because the $3.6 million is merely a ceiling figure, Friedman's arguments are unripe absent an actual award of monetary relief.

damage.  *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632–33 (1959) ("A plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him." (citing Cal. Civ. Code § 3360)).  The evidence of EyeLight's business shortcomings and its struggle to develop a working relationship with MLase, contrasted with the evidence showing that EyeLight and MLase may have been close to consummating a deal, together create a triable issue as to the monetary relief to which EyeLight would be entitled in the event of a breach.

REVERSED and REMANDED for further proceedings.

*Elliot Friedman v. EyeLight, Inc.*, No. 22-56076
BUMATAY, Circuit Judge, concurring:

I concur with reversing the district court here. In my view, it was inappropriate to grant summary judgment to Elliot Friedman. The district court's decision was based on the improper conclusion that Friedman's use of the MLase counterproposal did not violate Friedman's non-disclosure agreement with EyeLight, Inc. But Friedman's NDA covers any "Confidential Information" received by Friedman from "any unaffiliated third party at the request of" EyeLight. It's uncontested that Friedman received MLase's counterproposal in his capacity as EyeLight's acting CEO during negotiations he knew to be confidential. Under these facts, there's a genuine dispute of material fact whether Friedman violated the NDA during his negotiations with MLase after leaving EyeLight. For example, a jury may need to resolve whether EyeLight requested the counterproposal and whether EyeLight considered the counterproposal confidential. Even without the counterproposal, EyeLight contends that Friedman used confidential information in negotiations with MLase. It does seem that a jury would need to resolve whether Friedman acquired confidential information about the ophthalmology field, which he used to engage with MLase.

I thus would reverse the summary judgment order and not reach any other issue.

1